**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

FDS INTERNATIONAL,

    Plaintiff,

v.

SEKO WORLDWIDE, INC.,

    Defendant.

Civil Action No. 06-cv-1023 (PGS)

**OPINION**

**SHERIDAN, U.S.D.J.**

    This matter comes before the Court on Defendant Seko Worldwide, Inc.'s ("Seko") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). This matter was initially brought before the Superior Court of New Jersey, by which Plaintiff FDS International ("FDS") sought an order vacating an arbitration award. The matter was subsequently removed to this Court based on diversity jurisdiction and the instant motion was filed. For the reasons that follow, defendant's motion is granted and plaintiff's Complaint is dismissed with prejudice.

I.

    FDS International is a Paramus, New Jersey based company engaged in the business of designing, developing, and distrubuting software and computer based solutions to the freight industry. In 1990, and then again in 1994, FDS entered into a Software License Agreement and Software Warranty and Support Agreement with Daher, America, Inc. Another Agreement was entered into in 1996 with Daher, America, Inc's successor, Daher, Golden Eagle, Inc.

Thereafter, in 1997 U.S. Freightways acquired Seko Worldwide, Inc., whose name was subsequently changed to USF Worldwide, Inc. By 2000, USF Worldwide, Inc. would acquire Daher, Golden Eagle, Inc., as well as the licensing of the FDS system. In October 2002, two companies, Seko Worldwide Acquisitions and GPS, purchased the assets and liabilities of USF Worldwide, Inc. At some point, GPS sold its interest in USF Worldwide, Inc. to Seko Worldwide Acquisitions in exchange for cash and assets.

In January 2003, a second closing occurred between USF Worldwide, Inc. and GPS by which GPS was given the computer system and FDS software. USF Worldwide, Inc. changed its name to Seko Worldwide, Inc. ("Seko"), the defendant in this matter. In light of the decision to give the software system to GPS, Seko sent to FDS its 180-day termination notice as required by its Agreement. During the termination period, both GPS and Seko shared the monthly fees to FDS until July 2003, at which time GPS would be solely responsible for any and all payments. On July 31, 2003, GPS signed a new agreement with FDS. Since that date, Seko has not made any payments to FDS.

On June 19, 2003, Seko called FDS to inquire about certain software products. In the coming weeks, a demonstration was given to Seko's staff. However, during a follow-up sales call, FDS was informed that Seko would be very busy in the coming months and did not have time to evaluate software. However, in November 2003, Seko's IT manager contacted FDS requesting information regarding an error prompt when accessing FDS software. FDS advised Seko that all software and files contained therein should have been destroyed and that Seko should take steps to license the software. Thereafter, Seko requested a sales quote, which was provided on December 1, 2003. Seko rejected the offer, prompting FDS to request immediate return of all FDS software. The request was ignored and Seko, according to FDS, continued to unlawfully possess and use the software. On

March 18, 2004, Seko's counsel asserted that Seko had the right to use the software pursuant to the terms of the Agreement.

FDS filed a demand for arbitration on June 24, 2004 with the American Arbitration Association, pursuant to the arbitration clause contained in the agreements. The arbitration was held before Linda G. Harvey, Esq. on June 21, 22, and 24, 2005. On October 27, 2005, the arbitrator filed and served the award, rejecting all claims asserted by FDS.

FDS filed a Verified Complaint in the Superior Court of New Jersey, Bergen County, Chancery Division in February 2006, stating:

> The said award was procured by undue means and/or the arbitrator exceeded the arbitrator's powers. More particularly, the arbitrator failed to recognize that Defendant had unlawfully taken possession of FDS's software and loaded and used the software on a system other than the computer system specified under the Agreements. Such unlawful possession and/or use of FDS's software violated the express terms of the Agreements and upon information and belief began in or about July 1, 2003 and continues up to the present. The arbitrator's failure to recognize and apply these basic facts and the basic terms of the Agreements reveals that the arbitrator made a mistake that is apparent on the face of the record and reveals that the arbitrator failed to enforce the Agreements.

Seko, incorporated under the laws of the State of Delaware with its principal place of business located in Illinois, removed the matter to the District Court based on diversity jurisdiction.

II.

On a motion to dismiss for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See *In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any

set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, *Fed. Practice & Procedure*: Civil 2d § 1357 at 340).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); 5A Wright & Miller, *Fed. Practice & Procedure*: Civil 2d § 1357. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (emphasis in original) (quoting *Shaw v Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. Fed R. Civ. P. 12(b).

III.

Pursuant to the FDS International Software License Agreement, the Agreement is governed by the laws of New Jersey and, thus, New Jersey's Arbitration Act. New Jersey's Arbitration Act was amended effective January 1, 2003. See *N.J.S.A.* 2A:23B-1 to -32. The present act is a modified

version of the Uniform Arbitration Act of 2000 as proposed by the National Conference of Commissioners on Uniform State Laws. See Assembly Judiciary Committee Statement, Senate, No. 514--L.2003, c. 95. The new act retains the prior act's "evident partiality" language. *N.J.S.A.* 2A:23B-23. However, it contains detailed disclosure and conflict of interest provisions that were previously statutorily unexpressed. See *N.J.S.A.* 2A:23B-11 and -12.

The vacation of arbitration awards is now governed by *N.J.S.A.* 2A:23B-23, which provides, in relevant part:

> Upon the filing of a summary action with the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if:
> (1) the award was procured by corruption, fraud, or other undue means;
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act ...
> (4) an arbitrator exceeded the arbitrator's powers;
> (5) there was no agreement to arbitrate ...
> (6) the arbitration was conducted without proper notice of the initiation of an arbitration ...

*N.J.S.A.* 2A:23B-23.

Under this statute, arbitration awards are "final, not subject to judicial review absent fraud, corruption, or similar wrongdoing on the part of the arbitrators." *700 Gotham, LLC v. J. Manheimer, Inc.*, 2005 WL 1017593 (Law. Div. 2005)(Walsh)(citing *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 N.J. 349, 357, 640 A.2d 788 (1994)). Thus, an award may not be vacated "even though it might be based on a mistake of law." *Tretina Printing*, supra, 135 N.J. at 357, 640 A.2d 788. As a private sector arbitration, the appropriate judicial scope of review does not encompass errors of law or facts. *Empire Fire & Marine Ins. Co. v. GSA Ins. Co.*, 354 N.J.Super. 415, 808 A.2d 98 (App. Div. 2002).

As such, the Court is bound by New Jersey precedent, set forth in *Tretina Printing*, that an award could be vacated only in the case of fraud, corruption or similar wrongdoing. *Tretina Printing*, supra; see also *High Voltage Eng. v. Pride Solvents*, 326 N.J.Super. 356, 363, 741 A.2d 170 (App.Div.1999); *Allstate Ins. Co. v. Universal Underwriters Ins. Co.*, 330 N.J.Super. 628, 632-33, 750 A.2d 223 (App.Div.2000); *Habick v. Liberty Mutual Fire Ins. Co.*, 320 N.J.Super. 244, 253, 727 A.2d 51 (App.Div.), certif. denied, 161 N.J. 149, 735 A.2d 574 (1999).

Therefore, the plaintiff must demonstrate fraud, corruption, or similar wrongdoing to justify vacating the award. Such is not alleged here. Rather, plaintiff alleges that the arbitrator reached the decision by "undue means." Prior case law in New Jersey has defined undue means as "a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." *State of New Jersey, Office of Employee Relations v. Communications Workers of America*, 154 N.J. 98, 111, 711 A.2d 300 (1998). The growing trend, as established in *Tretina Printing*, is that commercial setting, private sector, non-labor related arbitrations are afforded a more limited judicial review and any expansion of such a review should be provided in the parties' contract. The plaintiff's allegations that undue means is evidenced by the arbitrator's failure to recognize and apply basic terms of the parties' agreements does not state a claim for undue means as defined by *Tretina Printing*.

Plaintiff has also claimed that the arbitrator exceeded her powers. In its opposition to the motion to dismiss, plaintiff merely puts forth the agreements, the transcript of the proceedings, and the arbitration award to suggest that the arbitrator exceeded her authority in ruling in favor of defendant and denying the plaintiff's claims for relief. Nothing on the face of the award suggests or even hints that the arbitrator exceeded her powers in rendering her decision.

Defendant's motion is granted, dismissing plaintiff's Complaint with prejudice.

August 29, 2006

_____
PETER G. SHERIDAN, U.S.D.J.